# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Filed: January 22, 2020

No. 18-1085

CALIFORNIA COMMUNITIES AGAINST TOXICS, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND ANDREW WHEELER,
ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENTS

AIR PERMITTING FORUM, ET AL.,
INTERVENORS

Consolidated with 18-1095, 18-1096

On Petition for Rehearing En Banc

Before: GARLAND, *Chief Judge*, HENDERSON, ROGERS**,
TATEL, GRIFFITH, SRINIVASAN, MILLETT, PILLARD, WILKINS,
KATSAS, and RAO*, *Circuit Judges*, and SILBERMAN, *Senior Circuit
Judge*.

## **O R D E R**

Upon consideration of petitioners' petition for rehearing en
banc, the responses thereto, and the absence of a request by any
member of the court for a vote, it is

**ORDERED** that the petition be denied.

**<u>Per Curiam</u>**

FOR THE COURT:
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

\* Circuit Judge Rao did not participate in this matter.

\*\* A statement by Circuit Judge Rogers, dissenting from the denial of rehearing en banc, is attached.

ROGERS, *Circuit Judge*, dissenting from the denial of rehearing en banc: I vote for en banc review because the court has effectively rewritten the judicial review provision of the Clean Air Act, 42 U.S.C. § 7607(b), thereby abdicating this court's responsibility to review an agency decision of national importance. In so doing, the court misapplied precedent of the Supreme Court and this court.

At issue is a 2018 memorandum (the "Wehrum Memorandum") issued by the Environmental Protection Agency ("EPA") withdrawing and superseding a nearly quarter-century-old EPA policy. The Clean Air Act distinguishes between "major" and "area" (i.e., non-major) sources of hazardous air pollutants. 42 U.S.C. §§ 7412(a)(1), (2). Only major sources are subjected to rules requiring the maximum degree of reduction in emissions achievable, *id.* § 7412(d)(2), and must obtain Title V operating permits from their respective state permitting authorities, *id.* § 7661a(a). Since 1995, EPA has interpreted the Clean Air Act to allow a facility to reclassify from a major source to an area source only before the facility's first compliance date — this is what EPA refers to as the "once in, always in" policy. *See* Seitz Memorandum at 9. But in 2018, the Wehrum Memorandum overturned this long-standing policy: it declared that the "plain language" of the Clean Air Act "compels the conclusion" that a major source becomes an area source when it limits its potential to emit hazardous pollutants below the major source threshold. Wehrum Memorandum at 1 (citing 42 U.S.C. §§ 7412(a)(1), (2)).

This court, purporting to apply the two-prong test for final agency action in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), held that although the Wehrum Memorandum marked the consummation of EPA's decisionmaking process, it was not an action from which rights or obligations had been determined or from which legal consequences would flow, and thus was unreviewable pursuant to the pre-enforcement

provision in 42 U.S.C. § 7607 prior to completion of the Title V permitting process. *See* Slip Op. at 13–14. That holding flies in the face of precedent. In *Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000), the court held that an EPA guidance document was final action because EPA had articulated a "position it plans to follow in reviewing State-issued [Title V] permits" and "a position EPA officials in the field are bound to apply." *Id.* at 1022. In *National Environmental Development Ass'n's Clean Air Project v. EPA* ("*NEDACAP*"), 752 F.3d 999 (D.C. Cir. 2014), the court held that an EPA guidance document was a reviewable final action because it "provides firm guidance to enforcement officials about how to handle [Title V] permitting decisions" and "*compels* agency officials" to apply certain permitting standards. *Id.* at 1007.

Contrary to the court's conclusion here, for purposes of final agency action, the Wehrum Memorandum has the same effect as the documents at issue in *Appalachian Power Co.* and *NEDACAP*. It articulates EPA's new position on reviewing Title V permits. It dictates how agency officials will act. It alters the legal regime by advancing a new interpretation of the Clean Air Act. And it creates a new legal right by allowing major sources of hazardous air pollutants to reclassify as area sources, thereby easing regulatory restrictions on the emissions of hazardous air pollutants. Although the court states that the "Wehrum Memo itself does not revoke or amend a single permit," Slip Op. at 18, neither did the EPA guidance documents in *Appalachian Power Co.* or *NEDACAP*. The key to those cases was that EPA had articulated a nationwide policy it intended to apply in future Title V permitting proceedings, and consequently, pre-enforcement review was available.

3

But why does this error necessitate en banc review? Because it eviscerates Congress's determination that this court hears pre-enforcement cases arising under the Clean Air Act.

The Supreme Court has told us that the judicial review provision of the Clean Air Act, 42 U.S.C. § 7607(b), is "special" because that statute "specifically provides for preenforcement review." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 479 (2001). And Congress vested jurisdiction for that pre-enforcement review of nationally applicable EPA actions in this court, and only this court. *See* 42 U.S.C. § 7607(b)(1). But the court has now abdicated this special responsibility by rewriting the statute. The result is that any challenge to EPA's change in longstanding policy must be brought in a regional court in a challenge to an individual Title V permit. Such a result cannot be squared with Congress's desire for pre-enforcement review. Instead, review of this policy change, and others like it in the future, will occur only after permitting procedures have been completed in accord with the new policy announced in the Wehrum Memorandum.

Notably, this case arises in the context of deregulatory action, as opposed to regulatory action imposing, as in our precedents, an additional burden or requirement on regulated parties. If anything, the deregulatory posture underscores the significance of Congress's understanding of the need for pre-enforcement review. The new precedent created by the court's decision imposes an excessive burden on regulatory beneficiaries, in direct contravention of the statute. Those beneficiaries — people who breathe the air near major polluters — can no longer ask this court to review a nationally applicable EPA determination to decide whether it is lawful in one case that will set the policy for the entire country. Now, potential petitioners must monitor individual permit proceedings and file petitions in courts across the country after EPA decides to grant

a permit allowing deregulation of an emitting source's regulatory obligations. That is not what Congress directed, and it contravenes the statute's goals of uniformity and predictability, which benefit regulated parties and regulatory beneficiaries alike. Moreover (as petitioners' counsel explained at oral argument, *see* Oral Arg. Rec. 22:08–24:20 (Apr. 1, 2019)), it is difficult to understand how potential petitioners are supposed to monitor the multitude of major sources operating under Title V permits, much less corral the resources to challenge each individual reclassification in the appropriate court.

The court waved away the consequences of its holding by relying on a representation by EPA's counsel during oral argument that the Wehrum Memorandum does not have legal force in the Title V permitting process. Slip Op. at 16–17. This overly formalistic assumption belies how the Wehrum Memorandum — and other guidance documents like it — apply in practice. Take the Ponderosa Compressor Station, for example. Relying on the Wehrum Memorandum, with no other legal justification, EPA authorized the reclassification of that major source as an area source in a letter barely over a page long. *See* Pet. for Reh'g Add. 123–24. This court cannot review that reclassification, despite the fact that it was predicated solely on an EPA guidance document of national scope. No court will be able to review it, in actuality, unless a petitioner having Article III standing learns about the reclassification and timely challenges it in the appropriate regional court. *See* 42 U.S.C. § 7661d(b). Such individual challenges would need to be repeated for each individual reclassification. That result is inefficient for litigants and the judiciary, displaces Congress's goal of uniformity, and creates continued uncertainty for all parties.

Because the court has eliminated the pre-enforcement review that Congress created, EPA decisions of national scope are shielded from such review. EPA's new "interpretation" of the Clean Air Act will have continued reverberations that cut against Congress's design in a significant manner, the more deserving of en banc consideration. EPA's opposition to en banc review offers no persuasive reason not to do so. Therefore, I respectfully dissent from the denial of the petition for rehearing en banc.